# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **DORIS ERGLE LINDSEY PRATT,** Individually and on behalf of all other Similarly situated persons, ) ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 6:17-cv-03097-MDH |
| **AIR EVAC LIFETEAM** and **AIR EVAC EMS, INC.,** ) ) ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 13).

The parties submitted initial briefing and sur-replies regarding this motion. (Docs. 14, 19, 24, 27, and 29). On November 8, 2017, the Court held a hearing on this motion (Doc. 33), after which Defendant filed supplemental briefing. (Doc. 35). Thereafter, the Court permitted the parties to engage in limited discovery concerning certain issues pertaining to the motion. (Doc. 36). After completing discovery, the parties submitted final briefing regarding the motion. (Docs. 44, 45, and 46). The matter is now ripe for review.

## LEGAL STANDARD

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating

1

the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## BACKGROUND

This action arises from a dispute concerning the right of an air ambulance service to seek repayment for its services from certain insurance benefits following an automobile crash in which Plaintiff required the use of the air ambulance services.

Air Evac EMS, Inc., advertises and sells memberships related to its services. Plaintiff purchased a membership with Air Evac. In November 2008, she renewed that membership and signed a contract setting out the terms and conditions of her membership. A handful of provisions in that contract are relevant to this case:

- Air Evac EMS, Inc. (d/b/a Air Evac Lifeteam and d/b/a Texas Lifestar) ("AEL") offers memberships that provide prepaid protection against AEL air ambulance costs that are not covered by a member's insurance or medical benefits, subject to the following terms and conditions:

- 3. Members who have insurance or other benefits that cover the cost of ambulance services are financially liable for the cost of services up to the limit of any available insurance or benefit coverage. In return for payment of the membership fee, AEL will consider all air ambulance costs not covered by any insurance or benefits available to the member to have been fully prepaid. AEL reserves the right to bill directly the appropriate insurance or benefits provider for services rendered, and members authorize their insurer or benefits provider to pay any covered amounts to AEL directly. Members agree to remit to AEL any payment received from insurance or benefits providers for air medical services provided by AEL, not to exceed regular charges. . . .

- I authorize my insurer or benefits provider to pay any covered amounts to AEL directly.

2

- These terms and conditions supersede all previous terms and conditions between a member and AEL, including other writings, or oral representations, relating to the terms and conditions of membership abuse of the program.

At roughly the same time that Plaintiff received the membership contract, she also received a letter from Air Evac encouraging her to renew her membership.[1] That letter states, in pertinent part:

- To avoid any lapse in your membership, we encourage you to take time now and renew your membership.

- Your membership means that Air Evac will work on your behalf with your medical benefits provider to secure payment for your medical emergency flight. Whatever your medical benefits provider pays will always be considered payment in full for your flight.

In December 2009, Plaintiff was in an automobile accident in Russellville, Alabama. As a result of the accident, Plaintiff was severely injured and her elderly mother was killed. Plaintiff required the use of Air Evac's services for transportation to a hospital in Huntsville, Alabama.

On February 4, 2010, Air Evac submitted to Alfa Insurance a "Notice of Claim of Debt" regarding a claim identified as #D07-1001. Alfa Insurance had previously identified this claim as relating to Plaintiff's automobile accident. That claim pertained to a policy held by Rachel Ergle, Plaintiff's mother. Alfa Insurance identified Plaintiff as a "covered person" under that policy. The Alfa Insurance policy in Rachel Ergle's name stated, regarding "medical payments coverage":

- If this coverage is shown on your declaration, we will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury caused by a car accident and sustained by a covered person.

---

[1] The parties disagree regarding the timeline in which Plaintiff received the letter and the contract. Plaintiff has asserted that she received the letter and contract simultaneously, as part of the same mailing. For support, Plaintiff cites to the deposition of Joshua Redfield, a corporate representative of Air Evac, stating that this letter was sent out to encourage members to renew. There is no specific testimony indicating that the membership contract was sent separate from, or along with, the letter.

On February 22, 2010, Air Evac sent to Plaintiff a letter indicating Air Evac submitted a claim to Plaintiff's health insurance carrier, Blue Cross and Blue Shield of Alabama, in the amount of $18,249.68 for the cost of the air ambulance flight. Blue Cross paid Air Evac $8,294 for its services. Following receipt of this payment, Air Evac provided Alfa Insurance with a "Partial Satisfaction of Lien" acknowledging the payment and indicating that $9.955.68 remained unpaid. That "lien"[2] remains in place today.

In April 2010, Plaintiff filed a lawsuit arising out of the automobile accident naming as Defendants Courtney Lindsey, David Lindsey, Alfa Insurance, and State Farm Insurance. The claim directed at Alfa Insurance demanded that Alfa pay the policy limits of the uninsured/underinsured motorist benefits of an automobile insurance policy applicable to Plaintiff's vehicle. In August 2010, Air Evac wrote to Plaintiff's counsel in that case and requested an assignment of benefits. Air Evac and Plaintiff's counsel exchanged letters discussing the matter over the course of the following months. Ultimately, in March 2011, Plaintiff's counsel concluded that Plaintiff owed no money to Air Evac based on her membership. Air Evac responded that the automobile insurance coverage was applicable to the Air Evac membership agreement and that Air Evac had a right to collect based on that coverage.[3]

---

[2] The Court uses quotation marks around the reference to the lien because the nature of that lien is not entirely certain. The record indicates that Air Evac treated it as a valid and enforceable lien, thus the Court will continue to reference it as a lien and treat it as a lien.

[3] In the initial round of briefing, Plaintiff acknowledged that her Alabama lawsuit sought payment of benefits related to Plaintiff's own automobile insurance policy. However, during the course of discovery in the matter before this Court, Alfa Insurance produced the policy held by Plaintiff's mother, Rachel Ergle, indicating that it was the policy that provided coverage to Plaintiff regarding the accident. The Court makes this distinction here in a footnote because it will return to this issue in its analysis.

The record before the Court does not show any further contact between Plaintiff and Air Evac, or Plaintiff's counsel and Air Evac, until the commencement of this action by Plaintiff.

During the course of the limited discovery permitted in this matter, the parties deposed two Air Evac employees, Joshua Redfield and Patricia Thompson. Their testimony indicated that, to date, Plaintiff's account has not been officially zeroed out or the balance otherwise waived. However, that is due to the hold placed on Plaintiff's account as a result of active litigation. Both employees testified that Air Evac has not pursued any attempt to collect the remaining balance in the years since Plaintiff's then-counsel refused to pay Air Evac from the proceeds of Plaintiff's claim against Alfa Insurance. Furthermore, both employees testified that Air Evac has no intention of attempting to collect the remaining balance on Plaintiff's account, and that it is waiving the remaining balance, regardless of the outcome of the litigation pending before this Court.

The lien Air Evac sent to Alfa Insurance concerning Claim #D07-1001 has not been rescinded. However, Patricia Thompson testified that Alfa Insurance refused to acknowledge the lien and Alfa Insurance had already paid the proceeds of that claim to Plaintiff following a settlement. Air Evac contends it has not rescinded the lien because Air Evac will not pay the fee to do so where there is no possibility of payment related to that lien.

*Procedural Background*

Plaintiff initially filed this putative class action seeking damages and injunctive relief on behalf of "[a]ll resident citizens of the United States who purchased a membership with Air Evac Lifeteam pursuant to a written agreement which stated that Air Evac Lifeteam would waive all costs not covered by insurance or benefits." The Complaint identified a sub-class that would include those members "who have paid money to Air Evac Lifeteam over and above the amounts

paid by their insurance or benefits provider or who have been subjected to liens or collection efforts by Air Evac Lifeteam seeking payment over and above the amounts paid by their insurance or benefits provider."

Plaintiff's Complaint included eight counts alleging, *inter alia*, fraudulent misrepresentation, breach of contract, unjust enrichment, violation of the Missouri Merchandising Practices Act, and civil conspiracy. The Complaint does not include a count seeking declaratory judgment. Air Evac filed its Motion for Summary Judgment in June 2017. Following the initial round of briefing and the submission of sur-replies by both parties, Plaintiff withdrew all of her claims against Air Evac Lifeteam and all claims against Air Evac EMS, Inc., except Counts III and VIII for breach of contract and injunctive relief.

## DISCUSSION

The only issue before this Court is whether Air Evac is entitled to summary judgment on Plaintiff's claims for breach of contract and injunctive relief.

"A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (en banc). When interpreting a contract, a court must "ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. 2007) (en banc). The Court will rely on the language of the contract alone unless its terms are ambiguous. *Id*.

Before the Court begins its analysis of whether there is sufficient evidence to support Plaintiff's claim that Air Evac breached the membership contract, the Court must first discuss the

6

shifting and evolving nature of Plaintiff's arguments. To begin, Plaintiff's Complaint never identifies the act that Plaintiff alleges constituted a breach. Over the course of this litigation, the theory underlying the breach has repeatedly changed. During the initial round of briefing, Plaintiff argued that the breach arose from Air Evac seeking an assignment of benefits when it was not entitled to do so because of Missouri's prohibition on the assignment of subrogation of benefits in personal injury actions. In response, Air Evac argued that such a claim for breach of contract is preempted by federal law.[4]

Plaintiff's sur-reply asserted that its position merely went to the interpretation of the contract and that the claim was not preempted on that basis. Plaintiff further argued, for the first time, that Defendant breached the contract because it was not permitted to recover the amounts from the Alfa Insurance policy to begin with. Defendant's sur-sur-reply argued that whether the Alfa Insurance policy actually provided coverage was immaterial because Defendant never received any money from that policy. Defendant further argued that merely asking for an assignment of benefits related to that policy is not a breach of the membership contract.

Following discovery, Plaintiff's theory again changed. Now, Plaintiff argues that Air Evac breached the contract by seeking to collect from Claim #D07-1001 under the policy held by Rachel Ergle by not having zeroed out Plaintiff's balance with Air Evac, and by not having rescinded the "lien" associated with Claim # D07-1001. It is not clear whether Plaintiff has abandoned her old theories supporting her breach of contract claim, or if these theories are merely in addition to those earlier theories upon which Plaintiff claims she is entitled to relief. Ultimately, the Court need not resolve the question of abandonment.

---

[4] Specifically, the Airline Deregulation Act, which prohibits states from imposing laws related to the price, route, or service of an air carrier. *See* 49 U.S.C. § 41713(b)(1).

7

## I. Anti-Subrogation Law

The first question the Court must resolve is whether Missouri's anti-subrogation law is preempted by federal law. The Airline Deregulation Act (ADA) preempts all claims based on a state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Missouri law expressly prohibits the assignment or subrogation of any personal injury claim. *Huey v. Meek*, 419 S.W.3d 875, 878 (Mo. Ct. App. 2013). Plaintiff argues that the Court must interpret the membership contract with this prohibition in mind, and conclude that even merely seeking an assignment of benefits from a personal injury claim would constitute a breach of the contract. Federal law does not allow such an interpretation. Two Supreme Court decisions guide this conclusion.

First, in *Am. Airlines v. Wolens*, 513 U.S. 219 (1995) the Supreme Court stated that the ADA "stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims that an airline dishonored a term that the airline itself stipulated." *Id.* at 232-33. The Supreme Court explained, "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. In other words, a court may not superimpose any state law or policy — that relates to prices, route, or services — onto a contract that is subject to the ADA's provisions in order to modify the parties' arrangement. This includes one of the oldest aspects of modern contract law: the implied covenant of good faith and fair dealing. In *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422 (2014), the Supreme Court held that the implied covenant of good faith was preempted by the ADA, and could not be read into the contact at issue, because it was a "state-imposed obligation" that existed outside of the terms of

8

the contract. *Id.* at 1432. Thus, it can be reasonably said that if a right to be enforced "stems from an external state law or policy" rather than an "internal restriction imposed by the parties' own agreement," then the right is preempted by the ADA. *Volodarskiy v. Delta Air Lines, Inc.*, Case No. 11-c-00782, 2012 WL 5342709, at *6 (N.D. Ill. Oct. 29, 2012).

Plaintiff invites this Court to consider Missouri's anti-subrogation laws and policies as "part of the backdrop against which the contract was written and, thus, [they] can help inform its interpretation without enlarging the contract in any way." (Doc. 45, pg. 15). The Court cannot do so. First, it is uncontested that Air Evac is an air carrier under the ADA. Second, Missouri's anti-subrogation law does have the force and effect of a law related to the price, route, or service of Air Evac. To read the anti-subrogation law into the contract would impact the ability of Air Evac to collect its fees, which relates to Air Evac's prices, routes, or services.[5] Finally, to do what Plaintiff asks would require this Court to give interpretational effect to a law that cannot be inserted into the agreement by the Court. Missouri's anti-subrogation law is not given effect in the text of the contract itself, and the Court cannot read it into the contract by simply assuming that the parties agreed to it because it is part of Missouri law.

## II. Breach

Plaintiff has also suggested that Air Evac breached the contract by seeking payment for air ambulance costs that were "not covered by any insurance or benefits available" to Plaintiff. Specifically, Plaintiff has argued that Air Evac would be entitled to summary judgment only if it could prove that the Alfa Insurance policy provided "benefits that cover the cost of ambulance

---

[5] Plaintiff has argued that the contract should be interpreted under Missouri law, rather than Alabama law, due to Alabama's lack of an anti-subrogation law. If Air Evac could obtain payment under Alabama law, but not under Missouri law, it seems evident that Missouri's anti-subrogation law "relates" to prices, routes, or services.

services," that Plaintiff actually received payments from Alfa under that policy for "air medical services provided by" Air Evac, and that Alfa provided Plaintiff medical benefits or insurance as described in the contract. In essence, Plaintiff argues that Air Evac breached the agreement *because* neither Plaintiff's own automobile insurance policy, nor Rachel Ergle's automobile insurance policy, were applicable to Air Evac's services.

*a. Contract Interpretation*

When interpreting a contract, a court must "ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." *Ethridge*, 226 S.W.3d at 131. The Court will rely on the language of the contract alone unless its terms are ambiguous. *Id*. "A contract is ambiguous when it is reasonably susceptible to different constructions." *Lafarge N.A., Inc. v. Discovery Grp., L.L.C.*, 574 F.3d. 973, 979 (8th Cir. 2009). "Whether a contract is ambiguous is a question of law." *Id.* However, if a contract is determined to be ambiguous, "then a question of fact arises as to the intent of the parties, and thus it is error to grant summary judgment." *Id.* (internal quotation marks omitted). As a question of fact, this issue is reserved for the fact-finder. *Id.* at 981, n.3.

The Court concludes that the membership contract at issue in this case is ambiguous due to the conflicting and confusing usage of terms related to the benefits from which Air Evac can collect. The opening paragraph of the contract indicates that Air Evac will treat as prepaid any costs not covered by "a member's insurance or medical benefits." Paragraph three of the contract refers at one point to "[m]embers who have insurance or other benefits," "any insurance or benefits available to the member," "the appropriate insurance or benefits provider," that "members authorize their insurer or benefits provider," and "any payment received from insurance or benefits providers." The acknowledgement paragraph at the end of the contract

10

states that the member agrees to "authorize my insurer or benefits provider to pay any covered amounts to AEL directly."

This language is woefully ambiguous. Is the contract limited to only "a member's insurance or medical benefits"? At least two statements in the contract would support such an interpretation. Does the contract extend to those policies held by entities other than the member but that provide coverage to the member? Two statements could support that interpretation. Finally, there is a question as to what types of coverage are contemplated by the contract: Is it limited to health insurance and self-insured health benefits, or does it extend to med-pay coverage, or liability insurance and/or UIM coverage? References to "any insurance or benefits available to the member" might support a broad interpretation, but a reference to medical benefits in the initial paragraph would support a narrower interpretation. The letter sent by Air Evac encouraging Plaintiff to renew her membership only contributes to the confusion, as it refers to "[w]hatever your medical benefits provider pays. . . ." This is a problem that would have been easily prevented with a simple list of definitions and a consistent usage of terms and phrases.[6] As drafted, a reasonable person could interpret the contract as limiting Air Evac to medical benefits from health insurance or medical payments, to the exclusion of amounts received from automobile liability or UIM coverage.[7] As it stands, the Court must deem the contract ambiguous and deny summary judgment. Therefore, there is a fact question as to the intentions of the parties in forming the contract.

---

[6] The Court notes that the contract was drafted by Air Evac.
[7] Although not at issue here, similar ambiguities exist regarding application of the contract terms to insurance covering premises liability and workers' compensation benefits.

*b. Air Evac's Actions*

Air Evac's actions in this case are undisputed. Shortly after Alfa Insurance identified Claim #D07-1001 as applying to Plaintiff's accident, Air Evac sent a "Notice of Claim of Debt" to Alfa concerning that claim. Once Air Evac received partial payment for its services from Plaintiff's health insurance provider, Air Evac sent a "Partial Satisfaction of Lien" notice to Alfa Insurance indicating the balance that remained outstanding regarding Claim #D07-1001. In August 2010, Air Evac made contact with Roger Bedford, Plaintiff's counsel in her state claim against Alfa Insurance. That contact included a request for an assignment of benefits and attached to it was a proposed assignment agreement. Some back-and-forth negotiation took place between Air Evac and Mr. Bedford, which ultimately concluded with Mr. Bedford indicating his belief that Air Evac was not entitled to any money from the insurance, followed by Air Evac asserting its position that the automobile insurance was applicable to its services. Air Evac failed to rescind its "lien," but the evidence available to the Court indicates that the lien applies only to Claim #D07-1001 and Alfa Insurance has refused to acknowledge it. Undisputed deposition testimony indicates that Plaintiff and Alfa settled that claim and Alfa paid to Plaintiff the benefits of that claim. It is also true that Air Evac has not zeroed out or waived Plaintiff's balance within its own records, but it is further undisputed that Air Evac has undertaken absolutely no effort to collect on Plaintiff's balance since the exchange between Air Evac and Roger Bedford. The question the Court must first ask is this: Do any of these actions constitute a breach of the membership contract between Plaintiff and Air Evac? The Court finds that there is a factual question, and summary judgment is not appropriate.

In any circumstance where there may be some question as whether a party is entitled to receive payment under a contract, there is an inherent expectation that one party will ask for

payment and the other party will have to either refuse or agree. If the party seeking payment receives money to which it is not entitled, then it has breached the contract. If the party seeking payment takes adverse action in an attempt to compel payment of money to which it is not entitled, it has also breached the contract. However, a party has not breached the contract by virtue of a mere request or inquiry regarding payment.

The document referred to as a "lien" by Air Evac's corporate representative and in Exhibit 3 of Air Evac's Suggestions in Opposition (Doc. 44-3) prevents this Court from determining that Air Evac did not take adverse action against Plaintiff in an attempt to collect payment. The record before the Court does not enable the Court to conclusively determine whether the "Notice of Claim of Debt" (Doc. 44-2) followed by the "Partial Satisfaction of Lien" (Doc. 44-3) was, in fact, a valid and enforceable lien that would have entitled Air Evac to the payment of at least a portion of the benefits from Claim #D07-1001 of Rachel Ergle's Alfa Insurance policy.[8] The Court must, at this time, take Air Evac's corporate representatives at their word and approach this matter as if Air Evac had perfected a lien against the benefits provided by Rachel Ergle's policy. Assuming that it is a lien, Air Evac's corporate representative acknowledged that the purpose of the lien was to notify the insurer that amounts were owed to Air Evac in relation to the accident and to ensure that the funds from the policy would be protected until Air Evac received payment for its services. Air Evac's corporate representative agreed that "[t]he practical effect . . . of that is that in the meantime the member does not have those funds at their disposal." (Doc. 45-3).

---

[8] Furthermore, even if the "lien" were not valid and enforceable, it reflects a clear attempt by Air Evac to divert funds from Plaintiff to itself.

Given this description of the lien and its purpose, it is reasonable to infer at this time that the lien would constitute as an adverse action taken in an attempt to compel payment on the benefits in Rachel Ergle's policy from Claim #D07-1001. The fact that Alfa refused to honor or otherwise acknowledge the "lien" is of no consequence. If Air Evac was not entitled to payment from Rachel Ergle's policy, then its actions taken to compel payment of benefits from that policy may establish a breach of the membership contract. Whether Air Evac took adverse action does not necessarily require that Alfa Insurance have complied with the lien, as that is a question that goes to damages.

On the matter of the request for an assignment of benefits, the Court concludes that such a request could not constitute a breach of the contract. Simply *asking* for payment of benefits associated with a contract is not a breach of the agreement, even if it is ultimately determined that the asker is not entitled to the payment. This scenario could be likened to an insurance company suing its insured for breach of contract because an insured sought payment of benefits for which the insurance company determined the insured was not covered. The proper course of action in those circumstances, if the insurance company wishes to take legal action, is to seek declaratory judgment and a determination that the insurance company is not obligated to pay. The insurance company would have no cause of action for breach of contract simply because the insured asked or otherwise filed a claim for benefits.[9] Air Evac's actions in contacting Plaintiff's counsel, Roger Bedford, were no different than an insured asking for payment of benefits under a

---

[9] The Court notes that an insured presenting a fraudulent claim would establish a cause of action for breach of contract. However, where there is some legitimate question as to whether the insured is entitled to payment, or the claim is otherwise made in good faith, a breach of contract claim would not be actionable. There is no evidence in the record before this Court lending any credence to the notion that fraud played a role in Air Evac's request for an assignment of benefits.

policy: it thought it was entitled to payment, it asked for payment, and payment was refused. On this point, Plaintiff does not even allege that Air Evac actively pursued or actively persisted in its effort to collect payment from her after Roger Bedford turned down Air Evac's request for an assignment of benefits. Thus, the Court will grant summary judgment on the theory that Air Evac breached the contract by requesting an assignment of benefits.

The only remaining possible theory for a breach of contract claim is that Air Evac breached the contract by failing to zero out Plaintiff's balance within its record after being turned down for payment. The Court will not grant summary judgment on this issue, as there is a question of fact as to whether Air Evac had an obligation to do so under the membership contract. Furthermore, there is a question of fact as to whether Air Evac waived Plaintiff's balance in fact, if not in its own records, by declining to further pursue payment.

### III. Damages

Damages are the final element of a breach of contract claim. The evidence before the Court on this Motion for Summary Judgment shows that, while Air Evac may have placed a "lien" on the benefits in Rachel Ergle's Alfa Insurance policy, nothing ever came of that lien. There is no evidence showing that Plaintiff's credit history was damaged or that Plaintiff's payments from Alfa Insurance were delayed in any way by this lien.[10] Additionally, the evidence

---

[10] In Plaintiff's final suggestions in opposition (Doc. 45) Plaintiff summarizes the harm to her in this manner: "[A]s a result of [Air Evac's] breach of their contract, [Plaintiff] is left with an open account balance, a recorded Claim of Debt and an unauthorized delay in her receipt of settlement proceeds from her car accident and resulting loss of use of her money for the period of time that she did not have it due to the lien asserted." However, Plaintiff has put forth no evidence that the open account balance or the Claim of Debt has caused her harm by being reported to a credit reporting agency or otherwise. Furthermore, Plaintiff at the last instant, claims in her final suggestions that her settlement with Alfa Insurance was delayed because of the lien. This claim was not included in her Statement of Uncontroverted Facts, and she has not cited or provided any evidence to support this new, and very late, assertion. As such, the Court cannot give effect to

15

further shows that Air Evac took no action to collect payment from Plaintiff after Roger Bedford refused to continue negotiations and stated that Air Evac had no right to the proceeds of Plaintiff's claim against Alfa Insurance. Finally, the evidence shows that Plaintiff suffered no harm from the fact that Air Evac did not zero out her balance within its own records.

Given what the evidence shows concerning damages, the Court will grant summary judgment on the issue of actual damages arising from the breach of contract. However, "proof of a contract and its breach gives rise to nominal damages." *Evans v. Werle*, 31 S.W.3d 489, 493 (Mo. Ct. App. 2000). Thus, even if the Court grants summary judgment on Plaintiff's theories of actual damages, the Court cannot grant summary judgment on the issue of nominal damages due to the questions of fact surrounding the allege breach.

## IV. Injunctive Relief

Plaintiff seeks injunctive relief that would require Air Evac to "suspend collection of air transport charges from those customers who entered into contracts containing the same or similar language to Plaintiff's contracts." Given that Air Evac has not rescinded its lien and has not zeroed out Plaintiff's balance in its own records, the Court cannot grant summary judgment on Plaintiff's claim for injunctive relief. While Air Evac has categorically stated that it will not pursue payment on Plaintiff's account, even if it prevails in this litigation, the standing lien and Plaintiff's account status prevent this Court from concluding that Plaintiff cannot continue to pursue injunctive relief on her own behalf — and on behalf of a putative class.

---

the claim that Plaintiff's settlement was delayed by the lien in ruling on Defendant's Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(b)(2).

## V. Conclusion

The Court **GRANTS** summary judgment to Defendant Air Evac Lifeteam on all counts based on Plaintiff's withdrawal of all claims directed to that Defendant.

The Court **GRANTS** summary judgment to Defendant Air Evac EMS, Inc., on Counts I, II, IV, V, VI, and VII based on Plaintiff's withdrawal of those claims.

The Court **GRANTS-IN-PART and DENIES-IN-PART** summary judgment to Defendant Air Evac EMS, Inc., on Count III. Summary judgment is granted on Plaintiff's theory that Defendant breached the contract by seeking an assignment of benefits from Plaintiff concerning her lawsuit against Alfa Insurance and on her theories for actual damages arising from the alleged breach of the contract. Summary judgment is denied on Plaintiff's theory that Air Evac's lien and failure to zero out Plaintiff's account balance constituted a breach of the membership contract. Furthermore, summary judgment is denied on the issue of nominal damages.

The Court **DENIES** summary judgment to Defendant Air Evac EMS, Inc., on Count VIII.

## CONCLUSION

Therefore, the Court hereby **GRANTS-IN-PART and DENIES-IN-PART** Defendants' Motion for Summary Judgment. (Doc. 13).

**IT IS SO ORDERED:**
Date: July 16, 2018

                                            */s/ Douglas Harpool*
                                            **DOUGLAS HARPOOL**
                                            **UNITED STATES DISTRICT JUDGE**